**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PATRICIA CAMPBELL,

             Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social
Security Administration,

             Defendant.

Case No. CV 14-8246 SS

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

Patricia Campbell ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her application for Title XVI Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. \\

For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

## II.

### PROCEDURAL HISTORY

On February 3, 2011, Plaintiff filed an application for Supplemental Security Income, claiming that she became disabled on April 11, 2005. (Administrative Record ("AR") 125-131, 162). Plaintiff based her alleged disability on head, neck and back injuries, bilateral carpal tunnel syndrome, seizures, loss of her sense of smell, arthritis of the hip and tailbone, and "equilibrium balance is off." (AR 162). The Agency denied Plaintiff's application on April 15, 2011 (AR 83) and upon reconsideration on November 22, 2011. (AR 92).

Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Dale A. Garwal on January 4, 2013 (the "ALJ Hearing"). (AR 58-80). Vocational expert ("VE") Gail Maron also testified. (AR 58, 76-79). On February 1, 2013, the ALJ issued an unfavorable decision. (AR 25-37). Plaintiff sought review before the Appeals Council (AR 20-21), which the Council denied on September 9, 2014. (AR 1-4). The ALJ's determination thus became the final decision of the Commissioner. (AR 1). Plaintiff filed the instant action on November 5, 2014. (Dkt. No. 3).

\\

2

### III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

3

1            the claimant is found disabled.  If not, proceed

2            to step four.

3    (4)  Is the claimant capable of performing his past

4            work?  If so, the claimant is found not disabled.

5            If not, proceed to step five.

6    (5)  Is the claimant able to do any other work?  If

7            not, the claimant is found disabled.  If so, the

8            claimant is found not disabled.

9

10   _Tackett_, 180 F.3d at 1098-99; _see also_ _Bustamante v. Massanari_,

11   262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20

12   C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

13

14      The claimant has the burden of proof at steps one through

15   four, and the Commissioner has the burden of proof at step five.

16   _Bustamante_, 262 F.3d at 953-54.  Additionally, the ALJ has an

17   affirmative duty to assist the claimant in developing the record

18   at every step of the inquiry.  _Id._ at 954.  If, at step four, the

19   claimant meets her burden of establishing an inability to perform

20   past work, the Commissioner must show that the claimant can

21   perform some other work that exists in "significant numbers" in

22   the national economy, taking into account the claimant's residual

23   functional capacity ("RFC"), age, education, and work experience.

24   _Tackett_, 180 F.3d at 1098, 1100; _Reddick_, 157 F.3d at 721; 20

25   C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do

26   so by the testimony of a vocational expert ("VE") or by reference

27   to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part

28   404, Subpart P, Appendix 2 (commonly known as "the Grids").

1   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a

2   claimant has both exertional (strength-related) and non-

3   exertional limitations, the Grids are inapplicable and the ALJ

4   must take VE testimony.  Moore v. Apfel, 216 F.3d 864, 869 (9th

5   Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th

6   Cir. 1988)).


                              **IV.**

                        **THE ALJ'S DECISION**


        The ALJ employed the five-step sequential evaluation

    process.  At step one, the ALJ found that Plaintiff had not

    engaged in substantial gainful employment since her SSI

    application date of January 26, 2011.[1]  (AR 30).  At step two,

    the ALJ found that Plaintiff had the severe physical impairments

    of cervical disc bulges at two levels of the cervical spine and

    one level of the lumbar spine, a stable bilateral old pars defect

    at L5-S1, a history of bilateral carpal syndrome, and a history

    of seizure disorder.  (Id.).  The ALJ noted that a CT scan of the

    brain showed a lacunar infarct in the right basal ganglia and

    mild periventricular small vessel ischemic changes, but concluded

    ───────────────

    [1] Plaintiff's alleged disability onset date is at issue in this
    case.  (See Plaintiff's Memorandum in Support of Relief Requested
    in Plaintiff's Complaint (the "MSC"), Dkt. No. 13, at 6-7;
    Defendant's Memorandum in Support of Answer ("Defendant's Memo"),
    Dkt. No. 14, at 4).  The ALJ did not refer to a disability onset
    date in his decision.  The ALJ used Plaintiff's SSI application
    date to establish the date that Plaintiff ceased substantial
    gainful activity and to determine which medical evidence was
    probative.  (AR 30).  In her SSI application, Plaintiff listed
    her last date of employment as April 2005, although she worked at
    a state fair for eleven days in 2008.  (AR 163).

that there were no "acute intracranial abnormalities." (AR 31). The ALJ also noted that an examining psychologist and a non-examining psychiatrist both diagnosed depressive disorder (id.), but found any related mental impairment nonsevere. (AR 32).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (AR 33). The ALJ found that "[n]o treating or consulting physician concluded that any of [Plaintiff's] alleged impairments met or equaled listing level severity." (Id.). The ALJ also found that "[n]o physician imposed multiple marked functional limitations on [Plaintiff]," and termed all of the objective medical evidence of record "mild." (Id.). The ALJ then found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except [Plaintiff] is limited to occasional bending and stooping. She can lift or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk up to 6 hours in an 8-hour workday.

(Id.).

In making this finding, the ALJ indicated that he had considered all of Plaintiff's symptoms and their consistency with

1  the objective medical and other evidence, as required by 20
2  C.F.R. § 416.929 and Social Security Rulings ("SSRs") 96-4p and
3  96-7p. (Id.). The ALJ also considered opinion evidence as
4  required by 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p and
5  06-3p. (Id.). Although the ALJ found that Plaintiff's
6  impairments could reasonably be expected to produce her pain and
7  other symptoms, he concluded that Plaintiff's testimony was not
8  credible to the extent that she alleged an inability to work.
9  (Id.).

10

11     At step four, the ALJ found that Plaintiff was capable of
12  performing her past relevant work as a clerk/cashier, which the
13  ALJ found "light, semiskilled work." (AR 35). However, "[i]n
14  the alternative" the ALJ provided a step-five analysis, and found
15  that based on Plaintiff's age, educational background, work
16  experience and RFC, she could perform a number of other jobs
17  available in significant numbers in the national economy. (Id.).
18  The ALJ opined that Plaintiff's limitations did not permit her to
19  perform the full range of "light," unskilled jobs. (AR 36).
20  However, based on the vocational expert's testimony, the ALJ
21  concluded that Plaintiff could perform the requirements of
22  "representative" occupations requiring light work, such as a
23  marker or an office helper. (AR 34). The ALJ also concluded
24  that Plaintiff could perform one sedentary job, as a cashier in a
25  check cashing agency. (AR 34, 78). Accordingly, the ALJ found
26  that Plaintiff was not disabled. (AR 36).
27  \\
28  \\

**V.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set the decision aside when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1997)).

To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for the Commissioner's. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

\\

\\

\\

# VI.

## DISCUSSION

Plaintiff asserts that the ALJ "derogated his duties to [Plaintiff] by failing to review all pertinent evidence and by not procuring clarification" from Plaintiff's treating physician. (Plaintiff's Memorandum in Support of Relief Requested in Plaintiff's Complaint (the "MSC"), Dkt. No. 13, at 6). Plaintiff claims that "[i]t is unclear whether [Plaintiff] actually amended her alleged onset date" during the ALJ Hearing, from April 11, 2005, as listed on her SSI application, to January 26, 2011, the date that an Agency interviewer began preparing Plaintiff's application. (Id.). Regardless of which onset date applies, however, Plaintiff asserts that the ALJ was obligated to consider medical evidence from Plaintiff's treating physician and a consultative examining physician that predated Plaintiff's application date. (MSC at 6-7). Because the residual functional capacity adopted by the ALJ failed to account for limitations assessed by these physicians, Plaintiff contends that the RFC did not properly reflect Plaintiff's true capabilities. (MSC 7-8).

Plaintiff also asserts that the ALJ failed to provide "clear and convincing reasons" for rejecting the credibility of Plaintiff's testimony about the severity of her symptoms. For the following reasons, the Court agrees with Plaintiff's contentions. Therefore, the ALJ's decision must be reversed and this action remanded for further proceedings.

\\

**A.    The ALJ Failed To Consider And Properly Credit Objective Medical Evidence From Treating And Examining Physicians When Assessing Plaintiff's Residual Functional Capacity**

Social Security regulations require the ALJ to consider all relevant medical evidence when determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520b, 416.927(c).  "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians."  Smolen, 80 F.3d at 1285.  "Therefore, an ALJ may not reject treating physicians' opinions unless he makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Id. (internal quotation marks and citation omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).  However, "like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995), as amended (Apr. 9, 1996) (citation omitted).

As a threshold matter, the Commissioner contends that during the ALJ Hearing, Plaintiff, acting through counsel, amended her

alleged disability onset date to January 26, 2011, the same date that she filed her SSI application. (Defendant's Memorandum in Support of Answer ("Defendant's Memo"), Dkt. No. 14, at 4). Therefore, the Commissioner asserts, the July 14, 2007 assessment of examining orthopedist Robyn Sato, D.O., which limited Plaintiff to sedentary work, is "simply irrelevant." (Id.; see also AR 284-88). The Court disagrees.

Although Plaintiff's counsel proposed to amend the alleged disability onset date during the ALJ Hearing, the ALJ never affirmatively granted this request. (See AR 60-61). Moreover, the ALJ did not identify any alleged disability onset date in his decision. To the contrary, the ALJ specified that "[m]any of the medical records predate the period at issue and are of no probative weight because they do not concern [Plaintiff's] medical condition since January 26, 2011, her application date." (AR 30 (emphasis added)). Because the ALJ did not resolve the matter of Plaintiff's disability onset date during the ALJ Hearing and did not address this question at all in his decision, the Court cannot determine the precise period that the ALJ considered to be "at issue."

Moreover, even assuming, arguendo, that Plaintiff amended her alleged onset date to January 26, 2011, medical evidence of record predating that period is not automatically irrelevant in determining whether Plaintiff was disabled. See 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); Carmickle v. Comm'r, Soc. Sec.

11

1   <u>Admin.</u>, 533 F.3d 1155, 1165 (9th Cir. 2008) (citation
2   omitted)(medical opinions that predate onset date may be
3   relevant); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)
4   (evidence predating alleged onset date relevant for showing that
5   condition worsened over time). Further, to the extent the lack
6   of clarity regarding the alleged onset date also resulted in an
7   ambiguous medical record, the ALJ was obligated to supplement the
8   record with additional evidence. <u>See</u> <u>Webb v. Barnhart</u>, 433 F.3d
9   683, 687 (9th Cir. 2005). Here, such evidence was readily
10  available among treatment records that the ALJ declined to
11  consider.

12

13      Plaintiff has alleged, <u>inter alia</u>, head, neck, and back
14  injuries, seizures, difficulties maintaining balance and carpal
15  tunnel syndrome. (AR 162). In her 2007 examination, Dr. Sato
16  diagnosed head, neck, and low back pain and carpal tunnel
17  syndrome. (AR 287). She observed that Plaintiff had a "wide-
18  based" gait, swayed while walking, had difficulty walking on her
19  heals and toes, and had difficulty getting on and off the
20  examination table. (AR 285-86). Dr. Sato noted Plaintiff's
21  account of sustaining a head injury when a heavy object fell on
22  her at the thrift store where she previously worked. (AR 285).
23  Plaintiff also had a "somewhat limited" range of motion in her
24  cervical region, some diffuse hyperreflexias, and a questionable
25  Hoffman's reflex on the right side. (AR 287).

26

27      Dr. Sato concluded that Plaintiff could stand or walk for
28  less than two hours in an eight-hour work day and could sit for

less than six hours, with a need for frequent position changes. (AR 287). Plaintiff did not need an assistive device to walk, but could lift and carry no more than ten pounds frequently or occasionally. (AR 288). Plaintiff was limited in bending, stooping or crouching. (Id.). Dr. Sato's assessment thus limited Plaintiff to work that the Agency classifies as "sedentary." See 20 C.F.R. § 404.967(a) (sedentary work "involves lifting no more than 10 pounds at a time. . . . Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

Dr. Sato's assessment of Plaintiff's functional limitations contradicts the residual functional capacity adopted by the ALJ, who found Plaintiff capable of "light" work that requires sitting, standing and walking for up to six hours of an eight-hour day and capable of carrying twenty pounds occasionally. (AR 33; see also 20 C.F.R. § 404.967(b)). The ALJ's decision makes no mention of Dr. Sato's report and, accordingly, the ALJ did not provide specific and legitimate reasons for rejecting these opinions in favor of contradictory reports from other physicians. Therefore, remand is necessary in order to consider the functional limitations assessed by this physician.

The ALJ's selective citation of medical records predating Plaintiff's SSI application date also weakens his assertion that

13

such records should be discounted.  (See AR 30-31).  Of relevance here, the ALJ noted the existence of several treatment records from Plaintiff's primary care physician, Carlos O'Bryan, M.D.,[2] dated from July 1, 2010 to October 21, 2010.  (AR 31, 317-22, 324-25, 328-32).  Although the ALJ opined that Plaintiff's physicians made "few medical findings" during this period (AR 31), Dr. O'Bryan made a number of findings that are directly relevant to Plaintiff's allegations.

For example, On July 1, 2010, Dr. O'Bryan diagnosed chronic low back pain and prescribed Soma.[3]  (AR 321).  On July 22, 2010, Dr. O'Bryan added prescriptions for Neurontin, an anti-seizure medication, and chlorthalidone.[4]  On August 10, 2010, Dr. O'Bryan diagnosed Plaintiff with ataxia and ordered an MRI and a neurological consultation.[5]  (AR 332).  On August 19, 2010, Dr.

_____

[2]  The ALJ attributed these records to Ventura County Medical Center without naming Dr. O'Bryan, a physician in that facility's Family Care Center.  Elsewhere in his decision, the ALJ identified Dr. O'Bryan as "Dr. Bryan," as did Plaintiff's MSC and Reply (Dkt. No. 15).

[3]  Soma, a brand-name version of carisoprodol, is a muscle relaxant prescribed to relieve pain and discomfort from sprains, strains and other muscle injuries.  See MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682578.html (last visited June 26, 2015).

[4]  Neurontin, a brand-name version of gabapentin, is in a class of medications called anticonvulsants.  Chlorthalidone is a "water pill" used to treat high blood pressure and fluid retention.  See MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/druginformation.html and enter drug name (last visited June 26, 2015).

[5]  "Ataxia often occurs when parts of the nervous system that control movement are damaged. People with ataxia experience a failure of muscle control in their arms and legs, resulting in a lack of balance and coordination or a disturbance of gait."  See Ataxia Information Page, National Institute of Neurological Disorders and Stroke website, http://www.ninds.nih.gov/disorders/ataxia/ataxia.htm (last visited June 24, 2015).

1    O'Bryan ordered further tests for Plaintiff's ataxia and ordered

2    a brain MRI and additional tests to try to establish a basis for

3    it. (AR 319). Dr. O'Bryan also observed Plaintiff's "stiff,"

4    "wide-based" and antalgic gait. (Id.). These diagnoses and

5    prescriptions provide relevant evidence of Plaintiff's alleged

6    back pain, seizures, and balance problems. (See AR 162).

7

8        The ALJ could not discount this physician's opinions without

9    providing specific and legitimate reasons for doing so. Smolen,

10   80 F.3d at 1285. However, the ALJ stated that "[t]here are no

11   treatment records from Dr. Bryan [sic] in the record," and that

12   this physician's findings were limited to a single form

13   questionnaire "on which he checked a few boxes and did not

14   discuss clinical findings." (AR 35). These statements, however,

15   are contradicted by the record. Furthermore, the questionnaire,

16   dated June 29, 2011, limited Plaintiff to sedentary work. (See

17   AR 383). The ALJ discredited this assessment because the

18   questionnaire was "unsupported medical [sic] and conflicted with

19   the other functional capacity assessments in the record." (AR

20   35).

21

22       This finding was inaccurate both because Dr. O'Bryan's

23   treatment reports appear in the record and because his functional

24   capacity assessment, which limited Plaintiff to standing or

25   walking for no more than two hours in an eight-hour day, was

26   largely identical to Dr. Sato's assessment.[6] (Compare AR 287-88

27   _____

28   [6] In fact, Dr. O'Bryan's assessment was more restrictive than Dr.
     Sato's in that it limited Plaintiff to no more than two hours of

                                  15

with AR 383).  Dr. O'Bryan's treatment records therefore contain medical evidence relevant to establishing the bases for Plaintiff's allegations.  The ALJ was required to evaluate these assessments and, to the extent they were contradicted by other evidence of record, to provide specific and legitimate reasons for rejecting them.  Remand is necessary so that Plaintiff's allegations may be evaluated on the basis of the complete range of medical evidence in this case, and in order to resolve the discrepancies between the adopted RFC and the functional assessments of Drs. Sato and O'Bryan.

The ALJ also cited an April 11, 2010, consultative examination by Shahrzad Sodagar-Marvasti, M.D.  According to the ALJ, Plaintiff told Dr. Sodagar-Marvasti that she suffered from a seizure disorder but "had experienced only one seizure and that the seizure had occurred a year prior to the evaluation."  (AR 31, 312).  This statement overlooks Dr. Sodagar-Marvasti's entire treatment record, which noted that Plaintiff "had a seizure a year ago," but did not state that Plaintiff claimed to have

_____

sitting at a time and found that Plaintiff would be likely to miss more than four days of work per month due to her impairments.  (Id.).  The VE identified only one sedentary job Plaintiff could allegedly perform given the residual functional capacity that the ALJ adopted.  (AR 78).  However, this job, as a cashier in a check cashing agency, also required sitting for six out of eight hours, a capability beyond the functional capacity Dr. O'Bryan assessed.  (Compare AR 78 with AR 383).  In addition, the VE opined that only 500 such positions exist in California and 10,000 nationwide.  (AR 78).  On remand, the ALJ must assess the availability of alternative work consistent with a revised RFC and also determine whether such jobs exist in "significant" numbers in the national economy.  See Tackett, 180 F.3d at 1101.

16

suffered only one seizure.[7]  (See AR 312).  The ALJ also stated

that Plaintiff "admitted" that her cane had not been prescribed

by a doctor.  (AR 31).[8]  (See AR 313).  However, this statement

is contradicted by an October 15, 2010 treatment record of

neurologist Kofi Kessey, M.D., who noted that Plaintiff "requires

an assistive device" and used a walker.  (AR 327).  To the extent

that the ALJ relied on Dr. Sodagar-Marvasti's examination records

to show that Plaintiff did not have a disabling ambulation

problem or a seizure disorder, on remand the ALJ should consider

Dr. Kessey's records and all other medical evidence on this

issue.


Finally, the ALJ notes non-examining medical consultant Lucy

Sauer, M.D.'s conclusion that Plaintiff's medical records do not

including treatment for a seizure disorder.  (AR 31, 349).  Dr.

Sauer's conclusion is, however, contradicted by the evidence of

record.  On April 16, 2009, Plaintiff was treated for seizure at

Santa Paula Hospital.  (AR 298-301).  On July 22, 2010, Dr.

O'Bryan prescribed Neurontin, an anti-seizure medication.  (AR

320).  Plaintiff also suffered a lacunar infarct of the right

basal ganglia and small vessel ischemic changes.[9]  (AR 353).  All

---

[7] At the ALJ Hearing, Plaintiff testified that she had had three
seizures, beginning approximately three years earlier.  (AR 68).
[8] At the ALJ Hearing, Plaintiff testified that her cane was
prescribed but she could not afford to purchase one.  (AR 69).
Therefore, "one was given to me."  (Id.).
[9] A lacunar infarct is an area of dead brain tissue caused by the
occlusion of small blood vessels and indicative of stroke.  See
National Institute of Neurological Disorders and Stroke website,
http://www.ninds.nih.gov/disorders/stroke/detail_stroke.htm (last
visited June 26, 2015).

of these objective findings are evidence of treatment for a seizure disorder or of a potential cause for such a disorder. "When a nontreating physician's opinion contradicts that of the treating physician -- but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician -- the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) (quoting Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Accordingly, to the extent that Dr. Sauer's assessment is contradicted by substantial medical evidence of record, remand is necessary for further consideration of this evidence.

**B.**   **The ALJ Did Not Provide Clear And Convincing Reasons To Reject Plaintiff's Subjective Testimony And Credibility**

     Plaintiff contends that the ALJ did not provide any specific reason for finding Plaintiff less than fully credible. (MSC at 2). Although the ALJ arguably provided two such reasons, the Court cannot conclude that the ALJ provided clear and convincing evidence for discounting Plaintiff's subjective evidence.

     When assessing a claimant's credibility, the ALJ must engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. (Id.). If the claimant meets this

threshold and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ may use "ordinary techniques of credibility evaluation" during this inquiry. Smolen, 80 F.3d at 1284. The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Tommasetti, 533 F.3d at 1039. Additionally, the ALJ may use evidence of the claimant's ability to perform daily activities that are transferrable to the workplace to discredit her testimony about an inability to work. Morgan, 169 F.3d at 600.

Here, because the ALJ failed to consider substantial medical evidence of record, the Court cannot conclude that the ALJ satisfied the first step of this two-step analysis. Moreover, even assuming, arguendo, that the ALJ based his conclusions regarding Plaintiff's medically determinable impairments on all of the available medical evidence, the ALJ failed to provide clear and convincing reasons for his conclusion that Plaintiff's testimony "was generally credible, but not to the extent she alleged an inability to perform any work." (AR 33).

The ALJ noted that Plaintiff was no longer taking any pain medication, but did not describe how this contradicted the medical evidence of record, which included a series of alleged disabilities that were unrelated to excessive pain. (See AR 34).

The ALJ also observed that Plaintiff "has not had surgery and no surgery has been advised," but did not discuss what kind of surgery might have been relevant to Plaintiff's alleged impairments. (See id.). The ALJ then listed several of Plaintiff's subjective claims without assessing their credibility. (Id.). These included Plaintiff's contentions that she needed assistance to get dressed, performed few household chores, ceased driving, went nowhere alone, used a cane daily, fell frequently and could lift "less than a gallon of milk in weight." (Id.). These claims, which the ALJ did not challenge, tend to substantiate Plaintiff's alleged physical impairments rather than calling them into question. (See id.). In sum, the ALJ did not provide "clear and convincing evidence" for discounting Plaintiff's claims.

In a disability benefits case, "[r]emand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). In contrast, "remand for an immediate award of benefits [is appropriate] if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

\\

\\

1     Here, the record does not establish that all issues in this
2     action have been resolved or that the ALJ would be required to
3     find Plaintiff disabled if the treating and examining physicians'
4     opinions were credited.  Therefore, this action must be remanded
5     for further proceedings.  On remand, the ALJ must develop the
6     record further to determine whether the treating and examining
7     physicians' opinions, if credited, would establish a disability.
8     If the ALJ discounts the opinions of treating and examining
9     physicians, he must provide specific and legitimate reasons for
10    doing so, supported by substantial evidence in the record as a
11    whole.  Aukland, 257 F.3d at 1037.  To the extent that the ALJ
12    asserts that Plaintiff's subjective testimony regarding the
13    severity of her symptoms lacks credibility, he must also provide
14    clear and convincing evidence for rejecting her stated
15    limitations.  Tommasetti, 533 F.3d at 1039.

16

17                              **VII.**

18                           **CONCLUSION**

19

20        Accordingly, IT IS ORDERED that judgment be entered
21    REVERSING the decision of the Commissioner and REMANDING this
22    \\
23    \\
24    \\
25    \\
26    \\
27    \\
28    \\

                                21

1  matter for further proceedings consistent with this decision. IT

2  IS FURTHER ORDERED that the Clerk of the Court serve copies of

3  this Order and the Judgment on counsel for both parties.

4

5  DATED:  July 1, 2015

6

7  _____/S/_____
   SUZANNE H. SEGAL

8  UNITED STATES MAGISTRATE JUDGE

9

10                          **NOTICE**

11  **THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS,
12  WESTLAW OR ANY OTHER LEGAL DATABASE.**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28